IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | I N F O R M A T I O N |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:22 CR 371 |
| | ) | |
| MICHAEL SHUMAK, aka MICHAEL KING | ) | Title 18, United States Code, Section 1349 |
| | ) | |
| Defendant. | ) | JUDGE PEARSON |
| | | MAG. JUDGE GREENBERG |

FILED
JUL 08 2022
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

GENERAL ALLEGATIONS

At all times material to this Information:

1.      Paragon International Wealth Management, Inc. ("Paragon") was a Canadian company formed in 2013.  Paragon's principal place of business was in Ontario, Canada.

2.      Paragon held itself out as an investment firm that sold colored diamonds. Paragon sold jewelry and diamonds through unsolicited telephone calls to individuals in the United States and Canada.

3.      James Gagliardini ("Gagliardini") formed Paragon in 2013 along with other individuals.  Gagliardini conducted business at Paragon under the alias "John Moore" and claimed to be Paragon's "Director of Marketing" when corresponding with Paragon's customers.

4.      Defendant MICHAEL SHUMAK ("SHUMAK") formed Paragon in 2013 along with other individuals.  Defendant conducted business at Paragon under the alias "Michael King" and claimed to be Paragon's "Director of Trading" when corresponding with Paragon's customers.

5.     Antonio Palazzolo, aka Anthony Palazzolo, ("Palazzolo") was employed at Paragon.  Palazzolo conducted business at Paragon under the aliases "John Carson" when corresponding with customers.

6.     Edward Rosenberg ("Rosenberg") was employed at Paragon.  Rosenberg conducted business at Paragon under the alias "Ed Rose" when corresponding with customers.

7.     Jack Kronis ("Kronis") was employed at Paragon.  Kronis conducted business at Paragon under the alias "Derek James" when corresponding with customers.

<u>COUNT 1</u>
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The United States Attorney charges:

8.     The allegations of paragraphs 1 through 7 are hereby repeated, re-alleged, and incorporated by reference as if fully set forth herein.

<u>The Conspiracy</u>

9.     From in or around 2013, to in or around 2018, in the Northern District of Ohio, Eastern Division and elsewhere, Defendant MICHAEL SHUMAK, aka, MICHAEL KING, and others presently known and unknown, did knowingly combine, conspire, confederate, and agree to devise and intend to devise a scheme and artifice to defraud and to obtain money and property, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, and attempting to do so, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signals, signs, pictures and sounds, that is, to knowingly cause interstate wire communications to be made in furtherance of said scheme and artifice to defraud, all in violation of Title 18, United States Code, Section 1343.

2

<u>Object of the Conspiracy</u>

10.    The object of the conspiracy was for Defendant and others associated with

Paragon to enrich themselves by persuading customers to invest in colored diamonds or other

jewelry by providing customers with false or misleading information.

<u>Manner and Means</u>

11.    It was part of the conspiracy that:

a.    Paragon would purchase lists of potential customers who resided in the United

States and Canada.  Paragon's employees would then make phone calls from their

physical offices located in Ontario, Canada, to potential customers in the United States

and Canada.

b.    Paragon's initial telemarketing sales pitch involved persuading customers to make

a small investment in "pink diamonds," which Paragon claimed would increase in value.

If the customer agreed to make a purchase, Paragon would mail the customer a real pink

diamond and a legitimate appraisal certificate.

c.    After a period of time, Paragon would contact the customer and persuade them to

invest more money.  At this point in the scheme, the sales pitches were often conducted

through false or misleading information.  One fraudulent method was for Paragon to tell a

customer that there was a "wealthy diamond buyer" in Hong Kong who was prepared to

buy large quantities of pink diamonds at a high price, but that the "wealthy buyer" would

only purchase the customer's pink diamonds if the customer invested more money with

Paragon.  In many cases, customers would invest more money based on these types of

false or misleading promises about liquidating their pink diamonds.

d.      After a period of time, Paragon would contact the customer again and provide a
false explanation for why the "wealthy buyer" did not purchase the customer's pink
diamonds.  One method was for Paragon to falsely claim that the "wealthy buyer" had
just gone through a divorce and was therefore unable to complete the deal.  In other
situations, Paragon would falsely claim that the deal with the "wealthy buyer" happened,
but that instead of paying cash, the "wealthy buyer" traded different his colored diamonds
(such as yellow or green diamonds) in exchange for the customer's pink diamonds.

e.      When a customer became upset about receiving more colored diamonds for their
pink diamonds, instead of the cash that they had been promised, Paragon often told the
customer that the customer's newly-acquired colored diamonds would be placed into an
auction, and that the customer's colored diamonds would likely sell for large amounts of
money.  These auctions, however, were largely fabricated.  In particular, Paragon
participated in fabricated online auctions so that no bids would be placed and that it
would be almost impossible for customers to view the auction.  After the date for a
fraudulent "auction" passed, Paragon would contact the customer and provide them with
false auction results, often telling the customer that their colored diamonds had failed to
meet the reserve bid.  Throughout this process, Paragon would ask customers to invest
more money to "upgrade" their diamonds in order to make the customer's diamonds
more valuable at future auctions.

f.      Paragon also sent customers with appraisal certificates from a business named
"Saxon Kruss," which fraudulently inflated the value of the colored diamonds that the
customer purportedly owned.  These inflated "Saxon Kruss" appraisal certificates

4

facilitated the scheme by falsely reassuring customers that their colored diamonds were worth more than their actual value.

g.      Paragon communicated with customers through telephone calls and emails. Paragon's customers were located throughout the United States and Canada, meaning that Paragon—which was based in Ontario, Canada—sent wire communications in interstate and foreign commerce during the course of this scheme.

<u>Acts in Furtherance of the Conspiracy</u>

12.      In furtherance of the conspiracy, and to effect the objects thereof, Defendant and others committed the acts described in the following paragraphs, in the Northern District of Ohio and elsewhere.

<u>*Paragon Victim "K.B."*</u>

13.      In or around February 2016, a Paragon employee, using the alias "John Moore" contacted K.B., an individual residing in Idaho. "Moore" persuaded K.B. to invest in pink diamonds with Paragon.

14.      On or about March 7, 2016, Paragon received approximately $2,090 from K.B. via credit card, sent from the United States to Canada.

15.      Later in 2016, SHUMAK, using the alias "Michael King," contacted K.B. SHUMAK persuaded K.B. to upgrade their pink diamonds for a different colored diamond. SHUMAK falsely told K.B. that Paragon had a buyer in Asia who was prepared to purchase K.B.'s diamonds for a profit.

16.      On or about May 9, 2016, Paragon received approximately $5,100 from K.B. via credit card, sent from the United States to Canada.

17.     On or about May 11, 2016, Paragon received approximately $27,000 from K.B. via wire transfer, sent from the United States to Canada.

18.     Later in 2016, SHUMAK contacted K.B. and falsely said that the deal with the buyer in Asia had fallen through because the buyer was getting divorced.

19.     In or around September 2016, Kronis, using the alias "Derek James," spoke to K.B. and persuaded K.B. to trade in their current diamonds for a different color of diamond, and to set K.B.'s new diamonds into jewelry to make them more appealing at auction. Kronis told K.B. that their diamonds were being placed into an auction at Ritchie's in Canada. But when K.B.'s diamonds failed to sell, Kronis falsely told K.B. that they did not meet the minimum reserve bid.

20.     On or about February 9, 2017, Paragon received approximately $50,000 from K.B. via wire transfer, sent from the United States to Canada.

21.     On or about February 28, 2017, Paragon received approximately $17,080 from K.B. via bank transfer, sent from the United States to Canada.

22.     In or around May 2017, Rosenberg, an employee of Paragon, using the alias "Ed Rose", contacted K.B. on behalf of Paragon and persuaded K.B. to purchase a ruby necklace. Rosenberg told K.B. he had contacts who would buy rubies, but Rosenberg did not have contacts interested in buying green diamonds, which resulted in K.B. purchasing a ruby necklace.

23.     On or about May 2, 2017, Paragon received approximately $2,000 from K.B. via credit card, sent from the United States to Canada.

24.     On or about May 5, 2017, Rosenberg K.B. an email stating, "Please see attached paperwork. My apologies for the delay in getting this information to you, we were awaiting the specs from the lab."

25.     On or about May 23, 2017, Paragon received approximately $12,500 from K.B. via credit card, sent from the United States to Canada.

26.     On or about May 23, 2017, Paragon received approximately $24,500 from K.B. via credit card, sent from the United States to Canada.

### *Paragon Victim "M.B."*

27.     In or around 2017, a Paragon employee contacted M.B., an individual residing in Georgia.  The Paragon employee persuaded M.B. to purchase $795 worth of pink diamonds.

28.     On or about May 24, 2017, Paragon received approximately $795 from M.B. via credit card, sent from the United States to Canada.

29.     On or about May 25, 2017, Paragon mailed M.B. the 0.09 carat pink colored diamond along with an appraisal certificate.  The enclosed letter was signed by Michael King, Paragon's Director of Trading.

30.     Subsequently in 2017, Palazzolo, using the alias "John Carson," contacted M.B. and claimed to have "a deal that only comes along once in a lifetime."  Palazzolo told M.B. that Paragon had a wealthy buyer in Asia who could purchase M.B.'s pink diamonds, netting M.B. a profit.  But in order to complete the deal, Palazzolo told M.B. that M.B. would need to invest in larger-sized diamonds.

31.     On or about November 27, 2017, Paragon received approximately $27,300 from M.B. via credit card, sent from the United States to Canada.

32.     Subsequently, in or around 2017, Palazzolo told M.B. that the deal with the wealthy buyer in Asia to purchase M.B.'s diamonds would be taking place on January 2018.

33.     Subsequently, in or around 2017 or 2018, a Paragon employee contacted M.B. and said that deal did not take place as planned because the buyer was going through a divorce.

34.     Subsequently, in or around 2018, a Paragon employee told M.B. that he could trade his current diamonds for a different color diamond, which would be easier to sell at auction.

35.     Subsequently, in or around 2018, a Paragon employee contacted M.B. to place his diamonds into an auction, but M.B. was told that his diamonds failed to sell because they did not meet the reserve bid.

### *Paragon Victim "C.L."*

36.     In or around 2016 or 2017, Palazzolo, using the alias "John Carson" contacted C.L., a resident of New York, about purchasing pink diamonds. Palazzolo said that there was an investor in Hong Kong who was trying to corner the market of pink diamonds, but that in order to participate in this investment opportunity, C.L. would need to purchase larger-sized pink diamonds than what C.L. already owned through Paragon.

37.     In or around 2017, a Paragon employee contacted C.L. and said that although the deal with the Hong Kong buyer happened, the buyer paid in yellow diamonds instead of cash.

38.     Subsequently, in or around 2017, SHUMAK, using the alias "Michael King," contacted C.L. and said that in order to liquidate the yellow diamonds, C.L. would need to participate in a lottery to sell off the yellow diamonds, but it would take time to complete.

39.     Subsequently, in or around 2017, Kronis, using the alias "Derek James," contacted C.L. on behalf of Paragon. Kronis said that C.L. could trade their yellow diamonds for a rare green diamond and a gold ring setting that could be auctioned by Ritchie's in June 2017. Kronis, however, said that C.L. would need to invest an additional amount of money to set the green diamond into the ring.

40.     Subsequently, in or around 2017, a Paragon employee told C.L. that the ring failed to sell because it did not meet the reserve bid.

41.     On or about April 17, 2017, Paragon received payments totaling approximately $37,950 from C.L., sent from the United States to Canada.

42.     On or about May 31, 2017, Paragon received payments totaling approximately $10,636.68 from C.L., sent from the United States to Canada.

### *Paragon Victim "N.H."*

43.     In or around February 2017, a Paragon employee contacted N.H., an individual residing in the Northern District of Ohio, Eastern Division.  The Paragon employee persuaded N.H. to invest in pink diamonds with Paragon.

44.     On or about February 8, 2017, Paragon received approximately $15,500 from N.H. via credit card payment, sent from the United States to Canada.

45.     Subsequently, in or around 2017, Paragon shipped the pink diamonds to N.H.

46.     In or around May 2017, a Paragon employee contacted N.H.  The Paragon employee persuaded N.H. to purchase brown/green diamonds at the wholesale price of $50,000.

47.     On or about May 2, 2017, Paragon received approximately $5,000 from N.H. via credit card, sent from the United States to Canada

48.     On or about May 9, 2017, Paragon received approximately $20,000 from N.H. via credit card, sent from the United States to Canada.

49.     On or about May 18, 2017, Paragon received approximately $25,000 from N.H. via credit, sent from the United States to Canada.

50.     In or around June 2017, SHUMAK, using the alias "Michael King," persuaded N.H. to sell his pink and brown/green diamonds to a buyer that SHUMAK claimed Paragon had lined up.

51.     Subsequently in 2017, SHUMAK contacted N.H. and said that the deal with the buyer had fallen through.

52.     In or around June 2017, SHUMAK persuaded N.H. to upgrade his pink and brown/green diamonds to yellow diamonds for an additional cost.

53.     On or about June 27, 2017, Paragon received approximately $50,000 from N.H. via credit card, sent from the United States to Canada.

54.     On or about July 12, 2017, Paragon received approximately $20,000 from N.H. via credit card, sent from the United States to Canada.

55.     On or about September 6, 2017, SHUMAK emailed the appraisal for the yellow diamonds to N.H.  The appraisal, prepared by Saxon-Kruss, stated that the value of the diamonds was $1,350,000, which was inflated significantly beyond the diamonds' actual value.

*Paragon Victim "A.F."*

56.     In or around August 2017, Palazzolo, using an alias, contacted A.F., an individual residing in Virginia.  Palazzolo persuaded A.F. to invest in a pink diamond with Paragon.

57.     On or about August 8, 2017, Paragon received approximately $795 from A.F. via credit card, sent from the United States to Canada.

58.     In or around September 2017, Palazzolo persuaded A.F. to invest in two additional pink diamonds.

59.     On or about September 21, 2017, Paragon received approximately $1,000 from A.F. via credit card, sent from the United States to Canada.

60.   On or about October 20, 2017, Paragon received approximately $18,902 from A.F. via credit card, sent from the United States to Canada.

61.   In or around November 2017, Palazzolo persuaded A.F. to invest in three additional pink diamonds.

62.   On or about November 24, 2017, Paragon received approximately $21,400 from A.F. via credit card, sent from the United States to Canada.

63.   In or around December 2017, Palazzolo persuaded A.F. to invest in three additional pink diamonds.

64.   On or about December 14, 2017, Paragon received approximately $28,050 from A.F. via a credit card, sent from the United States to Canada.

65.   In or around January 2018, Palazzolo persuaded A.F. to invest in four additional pink diamonds.

66.   On or about January 22, 2018, Paragon received approximately $20,000 via credit card payment and approximately $70,025 via a wire transfer from A.F., sent from the United States to Canada

### Paragon Victim "D.B."

67.   In or around November 2015, SHUMAK, using the alias "Michael King," contacted K.B., an individual residing in Illinois.  SHUMAK persuaded D.B. to invest in pink diamonds with Paragon.

68.   On or about November 2, 2015, Paragon received approximately $14,910 from D.B. via two credit card payments, sent from the United States to Canada.

69.   In or around December 2015, Palazzolo persuaded D.B. to invest in three additional pink diamonds.

70.     On or about December 9, 2015, Paragon received approximately $36,930.20 from D.B. via wire transfer, sent from the United States to Canada.

71.     In or around January 2016, Palazzolo persuaded D.B. to invest in an additional pink diamond.

72.     On or about January 26, 2016, Paragon received approximately $12,051.60 from D.B. via a credit card, sent from the United States to Canada.

73.     In or around April 2016, Kronis persuaded D.B. to invest in an additional four pink diamonds.

74.     On or about April 18, 2016, Paragon received approximately $12,000 from D.B. via a credit card, sent from the United States to Canada.

75.     In or around June 2016, Palazzolo persuaded D.B. to invest in an additional five pink diamonds.

76.     On or about June 7, 2016, Paragon received approximately $13,000 from D.B. via two credit card payments, sent from the United States to Canada.

77.     On or about June 8, 2016, Paragon received approximately $3,000 from D.B. via credit card, sent from the United States to Canada

78.     On or about June 17, 2016, Paragon received approximately $98,545 from D.B. via wire transfer, sent from the United States to Canada.

79.     In or around June 2016, SHUMAK persuaded D.B. to send D.B.'s pink diamonds back to Paragon in exchange for yellow diamonds.

80.     In or around August 2016, SHUMAK, Kronis, and Rosenberg persuaded D.B. to upgrade his yellow diamonds for two green diamonds and to have the green diamonds set into jewelry to make them more appealing at auction.

81.     On or about August 15, 2016, Rosenberg emailed the appraisal for the jewelry to D.B.  The appraisal, prepared by Saxon-Kruss, stated that the value of the jewelry was $2,105,000.

82.     Over the next several months Rosenberg told K.B. that the jewelry was placed up for auction, three different times, but D.B.'s jewelry failed to sell because a minimum reserve bid was not tendered.

83.     In or around April 2017, Rosenberg persuaded D.B. to invest in additional jewelry.

84.     On or about April 5, 2017, Paragon received approximately $5,000 from D.B. via credit card payment, sent from the United States to Canada.

85.     On or about April 26, 2017, Paragon received approximately $22,000 from D.B. via credit card, sent from the United States to Canada.

86.     In or around January 2018, a Paragon employee persuaded D.B. to purchase a blue diamond.

87.     On or about February 5, 2018, Paragon received approximately $1,000 from D.B. via credit card, sent from the United States to Canada.

88.     On or about the dates listed below, Defendant and others, for the purpose of executing the above-described scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signals, signs, pictures and sounds in furtherance of said scheme and artifice to defraud, including the following matters:

| Victim | Date | Wire Amount | Beneficiary Bank/Recipient |
|---|---|---|---|
| N.H. in the Northern District of Ohio | 2/8/2017 | $15,550 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| N.H. in the Northern District of Ohio | 5/9/2017 | $20,000 | Paragon International (Toronto, Canada) |
| N.H. in the Northern District of Ohio | 5/2/2017 | $5,000 | Paragon International (Toronto, Canada) |
| N.H. in the Northern District of Ohio | 5/18/2017 | $25,000 | Paragon International (Toronto, Canada) |
| N.H. in the Northern District of Ohio | 6/27/2017 | $50,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| N.H. in the Northern District of Ohio | 7/12/2017 | $25,000 | Paragon International (Toronto, Canada) |
| A.F. | 1/22/2018 | $20,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| A.F. | 1/22/2018 | $70,025 | Paragon International Wealth Management (Toronto, Ontario) |
| A.F. | 8/8/2017 | $795 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| A.F. | 9/21/2017 | $1,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| A.F. | 10/20/2017 | $18,902 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| A.F. | 11/24/2017 | $21,400 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| A.F. | 12/14/2017 | $28,050 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| K.B. | 3/7/2016 | $2,090 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| K.B. | 5/9/2016 | $5,100 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |

| K.B. | 5/11/2016 | $27,000 | J.P Morgan Chase Bank New York, New York-- (Beneficiary-Paragon International Wealth-Toronto, Ontario)-- Pick Up location Royal Bank of Canada (Toronto, Ontario) |
|---|---|---|---|
| K.B. | 2/9/2017 | $50,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| K.B. | 2/28/2017 | $17,080 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| K.B. | 5/2/2017 | $2,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 11/2/2015 | $5,270 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 11/2/2015 | $9,640 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 12/17/2015 | $36,930.20 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 1/26/2016 | $12,051.60 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 4/18/2016 | $12,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 6/8/2016 | $3,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 6/7/2016 | $10,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 6/7/2016 | $3,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 6/17/2016 | $98,545 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 4/5/2017 | $5,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 4/26/2017 | $22,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| D.B. | 2/5/2018 | $1,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| M.B. | 11/27/2017 | $27,300 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 4/17/2017 | $9,750 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 4/17/2017 | $11,100 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 4/17/2017 | $5,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 4/17/2017 | $5,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 4/17/2017 | $5,000 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |

| C.L. | 4/17/2017 | $2,100 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |
| C.L. | 5/31/2017 | $5,318.34 | Royal Bank of Canada (Toronto, Ontario)-Paragon International |

All in violation of Title 18, United States Code, Section 1349

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:  _EDWARD F. FERAN_

EDWARD F. FERAN
General Crimes Unit, Chief